IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN - 4 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GAIL AVENT next best friend & guardian of )
D.K. )
4818 Jay Street NE )
Washington, D. C. 20019 )
202-747-8878 )
)
        Plaintiff, )
)
V. ) Civil Action No. _____
)
DEPARTMENT OF YOUTH REHIBILIATION )
SERIVCES (DYRS) ) Case: 1:08-cv-00020
1000 MT. OLIVE ROAD N.E. ) Assigned To : Robertson, James
WASHINGTON, D. C. 20002 ) Assign. Date : 1/4/2008
VINCENT N. SCHIRALDI, Director, DYRS, and ) Description: Civil Rights-Non-Employ.
and individual capacities; DAVID MUHAMMAD, )
Chief, Committed Services, DYRS and individual )
capacities; CHARLES AKINBOYEWA , and individual )
capacities; DAVID MORRIS, DYRS Consultant, and )
individual capacities; LATOYA AUSTIN, and individual )
capacities )
) Jury Demand
)
)
        Defendants. )

**COMPLAINT**

**(Civil Rights Violations and Negligence-42 U.S.C. § 1983 Eighth Amendment-Intentional Infliction
of Emotional Distress)**

Plaintiff states the following Complaint against the Defendants named above:

1. Plaintiff Gail Avent ("Plaintiff Avent"), as a PRO SE plaintiff, hereby file this Complaint against above named defendants and the District of Columbia, asserting claims of failure to report sexual abuse of a committed ward, breach of contract, intentional inflection of emotional distress, violations of then minor child, D.K.'s Eighth Amendment rights and violations of the Code of the District of

- 1 -

Columbia, arising from the beginning early November 2006 and continuing to date of this filing of complaint. Plaintiffs seek damages, fees, costs and other appropriate relief.

2. This Complaint concerns constitutional violations that remain unaddressed by Defendants. Specifically, Defendants operate DYRS in the absence of policies and procedures, fail to supervise or to train directors, administrators and staff and are responsible for allowing a minor to have sexual relations with a correctional officer, despite warning from said minor's Plaintiff's mother.

3. Plaintiff Avent is being this complaint as and individual and on behalf of her then minor child, D.K. which occurred and continues to occur at all relevant times of this complaint.

4. Despite being on notice for more than 12 months of the egregious conduct of the correctional officer having sexual relations with Derrick, a wards of the District of Columbia, was subjected to at YSC and in the independent living facility, Defendants have at all times remained deliberately indifferent to Plaintiffs' constitutional and legal rights and have maintained conditions, policies, and practices at DYRS that constitute punishment and that are a substantial departure from accepted professional judgment, practices and standards.

5. Despite a court order to provide D.K. with mental health services, DYRS unlawfully failed to provide him essential community-based services, causing him to suffer great harm, as well as unnecessary, inappropriate exposure to unsafe independent living conditions without appropriate support.

6. While in the independent living facility, D.K. was routinely and unlawfully denied adequate mental health, medical and education services by Defendant, thereby causing him to suffer physical and emotional injury and making it very difficult for him to achieve satisfactory rehabilitation.

7. Defendants failure to arrange for the community-based services necessary for him to engage in their rehabilitation and remain out of trouble after he have serve his period of commitment further deteriorated his fragile mental state.

## JURISDICTION

8. Plaintiff seeks to vindicate rights protected by the Eighth Amendment of the Constitution of the United States, as well as the laws of the United States and the District of Columbia. This Court has subject matter jurisdiction in this civil action over Plaintiffs civil rights claims pursuant to 28 U.S.C.

§§ 1331 and 1343(a)(3) and (4). The claims include civil rights violations governed by 42 U.S.C. §§ 1983 and 1988 and 42 U.S.C. §§ 12132 and 12182. This Court has supplemental jurisdiction over the claims asserted pursuant to District of Columbia law pursuant to 28 U.S.C. § 1367.

## VENUE

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred within the District of Columbia.

## PARTIES

10. Plaintiff Gail Avent is the mother of D.K. Plaintiff Avent brings this action pursuant to the District of Columbia on behalf of D.K. and for claims on her own behalf.
11. Defendant District of Columbia operates the Youth Service Center Detention Facility ("YSC") and was responsible for transferring D.K. to the independent living facility, the WINS Family Service Center located in Baltimore, Maryland. D.K. remains in the custody and control of the District of Columbia at all times relevant to this Complaint.
12. Defendant **VINCENT N. SCHIRALDI** is Director of the Department of Youth Rehabilitation Services ("DYRS"), which oversees the Youth Service Center ("YSC"), and has been since his appointment. In that capacity, Defendant Schiraldi exercises administrative control of and has responsibility for the operation of all juvenile institutions, facilities, and programs under DYRS administration, including YSC.
13. Plaintiffs allege that Defendant Schiraldi inadequately trained Defendant **DAVID MUHAMMAD**, Chief of Committed Services, in the proper performance of his duties and inadequately supervised DYRS and its staff and YSC and its staff, thereby proximately causing the injuries that give rise to this action. Moreover, Plaintiffs allege that Defendant Muhammad has had actual knowledge of the illicit relationship and direct knowledge that the Austin was making frequent visits to the independently living facility in Baltimore at all times complained of herein and has been aware that Plaintiffs' rights have been violated, but have failed to conduct a reasonable inquiry into the formal complaint that are causing Plaintiffs' injuries and has not undertaken reasonable means to correct or terminate the illicit relationship, prior to the August 2007 marriage of Austin and Derrick. He is sued in both his individual and official capacities.
14. Defendant **CHARLES AKINBOYEWA** is the Program Manager assigned to supervise D.K. at all times relevant to this Complaint. Moreover, Plaintiffs allege that Defendant Akinboyewa has had actual knowledge of the illicit relationship and direct knowledge that the Austin was making frequent visits to the independently living facility in Baltimore at all times complained of herein and has been

- 3 -

aware that Plaintiffs' rights have been violated, but have failed to conduct a reasonable inquiry into the formal complaint that are causing Plaintiffs' injuries and has not undertaken reasonable means to correct or terminate the illicit relationship, prior to the August 2007 marriage of Austin to Derrick. He is sued in both his individual and official capacities.

15. Defendant **DAVID MORRIS** is a consultation hired by DYRS to participate in the planning, organizing and implementation of services to youth in YSC and other District of Columbia youth correctional facilities and treatment plans. Moreover, Plaintiffs allege that Defendant Morris a has had actual knowledge of the illicit relationship and direct knowledge that the Austin was making frequent visits to the independently living facility in Baltimore at all times complained of herein and has been aware that Plaintiffs' rights have been violated, but have failed to conduct a reasonable inquiry into the formal complaint that are causing Plaintiffs' injuries and has not undertaken reasonable means to correct or terminate the illicit relationship, prior to the August 2007 marriage of Austin to Derrick. He is sued in both his individual and official capacities.

16. Defendant **LOTOYA AUSTIN** is the correctional officer who began the illicit sexual relationship with D.K., a ward of the District of Columbia. Defendant Austin participated in a sexual relationship which resulted in marriage on or about August 18, 2007. Despite a formal complaint made by Gail, the authorities at DYRS and YSC allowed the relationship to flourish and while allowing Austin to continue to receive a pay check, until this date. This defendant also actively participated in harboring a fugitive despite remaining on DYRS payrolls as a duly sworn officer of the law.

## FACTUAL ALLEGATIONS

### A. Background History

17. Plaintiff, Gail Avent is the mother of D.K. who has a long history of suffering from mental health issues. Plaintiff Avent found herself in Juvenile Court because D.K. had committed a criminal offense. Plaintiff Avent took an actively role in making sure that her son's mental health issues would be address so that D.K. can reduce the frequency of involvement with the juvenile crime, delinquency and recidivism in the juvenile justice system.

18. D.K. then 16 years old at the onset of the events complained upon herein in this complaint and is ongoing to date. D.K. suffers from diagnosed mental health issues and is in need of mental health care to address those concerns. Plaintiff Avent believed that DYRS had her son's best interest at heart and relied upon that representation of help with her son when they made it in open court.

19. Sometime in July of 2006, D.K., then 17 years old, was sent to the Youth Service Center "YSC" after being arrested for a criminal offense.

20. After pleading to the criminal offense, D.K. was committed to DYRS until the age of twenty-one years old. It is a well documented fact that D.K. suffered from a number of mental health issues. Because of diagnosed mental health issues and the concern of Plaintiff Avent, it was agreed upon by Charles Akinboyewa, a case manager, representing DYRS, representations on behalf of Vincent N. Schiraldi, whom Plaintiff Avent was told took a personal interest in D.K.'s case, a representative from the Department of Mental Health, and a consultant hired by DYRS, Plaintiff Avent and D.K. all agreed that D.K. would be sent to an independent living program so that he could have his mental health issues met and make a successful reintegration into the community.

21. D.K. transferred to the WINS Family Center located in Baltimore, Maryland, on or about, December 26, 2006 to begin his independent living. The Independent Living Program Contract clearly stated it would provide continual support and clinical support in a safe environment. The agreement also assured all parties that a holistic, family-oriented approach will be employed that emphasizes youth and parental responsibility so as to reduce D.K.'s juvenile crime, delinquency and recidivism.

22. This Contract expressly provides in second to last paragraph,

    "The Supportive Living Team will provide continual support and clinical supervision..."Dated 12/26/07.

23. This Contract, provided for concrete, comprehensive remedial steps that Defendants through its contractual agreement with WINS would implement in order to promptly remedy the many programmatic, safety and procedural described above in this complaint.

24. In early 2007, Plaintiff Avent informed Defendants that DYRS was not substantial compliance with the Agreement. Plaintiff Avent concerns fell on deaf ear and there was no resolution to her concerns or even an unsuccessful attempt to resolve Plaintiff Avent concerns and, pursuant to the Contract, D.K. was not terminated from the program for repeated non-compliance for safety.

**B. Specific Violations of the Contract**

Substantial Violations of Paragraph #8 which Requires Actions to Ensure that D.K. was safe in DYRS Facilities.

25. In March 2007, a family meeting was held at the WINS family Services office located in Baltimore. The meeting was to discuss the progress of D.K. and Plaintiff Avent as a family and his adjustment to the independent living program. D.K. spoke of his desires to attend college. He had already enrolled on line to the local community college. Plaintiff Avent spoke of her concerns that D.K. was living in a four unit apartment building along. WINS Family Services ("WINS") assured Plaintiff Avent that D.K. had supervision after 11:00 p.m. Plaintiff Avent voiced her concerns of D.K. living

in a dwelling along. WINS response was that there is a person living in the basement. Despite their representations, the dwelling does not have a basement or basement apartment.

26. D.K. continued to be unsafe in the facilities operated by or under contract with Defendant DYRS; D.K. was not being protected from harm and unreasonable threats to safety were not eliminated, in violation of Paragraph #8. Defendants condone unsafe environment even after revealing having to call the police because an uninvited houseguest of D.K. had threaten to do bodily harm to him.

27. D.K. on this date signed an addendum to the already executed DYRS Independent Living Apartment Contract. In this document it states that D.K. will abide the curfew which is 11 p.m. daily. "No Exceptions". Shortly after the meeting, Plaintiff Avent discovered that D.K. was not meeting the agreed upon curfew. Plaintiff Avent advised WINS and Charles Akinboyewa to monitor D.K.'s curfew because of his tenancies to walk away from placement and chronic runaway behavior. Again Plaintiff Avent relied upon the DYRS and WINS representation that they would closely monitor D.K. whereabouts.

28. Defendants' failure to implement Paragraph #8 of the Contract has caused significant and permanent harm to D.K. while in their care and custody.

C. <u>Substantial Violations of the Family Team Plan which Requires Actions to Develop An Adequate Community-Based Mental Health Care Services to Serve D.K. While on Probation in An Appropriate Community Settings</u>.

29. Defendants have failed to develop adequate community-based mental health care services to serve D.K. during his commitment to DYRS in an appropriate community setting and have not substantially complied with Family Team Plan.

30. Plaintiff Avent at every meeting and during every conversation with Defendants DYRS, Defendant Charles, Defendant Muhammad and Defendant Morris would literally beg them to provide D.K. with court-ordered mental health care services in a community-based non-residential setting.

31. Plaintiff Avent related the urgent need for mental health care services as one being at a minimum the need for grief counseling. D.K. loss his older brother to a crime of violence in August 2006 and never received grief counseling from DYRS.

32. Plaintiff Avent received one email from WINS, more specifically the Director of Family Services-DC metro, Sharon Jennings, LGSW as reads:

> ...Therapy: I spoke with Dr. Green Today after call his supervisor for some assistance in getting him to respond to my call. He [Dr. Green] is stating that he no longer needs to see D.K. and he [D.K.] is cleared to start meeting with Dr. Garrett for Therapy at Progressive Life Center. Left a

message for Dr. Garret requesting an appointment. Once I [Sharon Jennings] have that I [Sharon Jennings] will let you [Charles Akinboyewa] know. Date Sent June 5, 2007.

33. Failure to comply is further evidenced by Plaintiff's Treatment/Behavior Plan for reporting period 4/07/07-6/07. Defendants by their own admissions admit to Plaintiff unsafe environment in the facilities operated by or under contract with Defendant DYRS. See specifically, Life Domain: Residential /Community, Targeted Outcomes, last paragraph "Derrick will refrain from traveling to DC and will only travel outside the State of Maryland with approval from Department of Youth and Rehabilitation Services.

34. Defendants looked the other way and had full knowledge that D.K. was violating not only the terms of his Treatment/Behavior Plan but his court imposed probation conditions of not coming into the District of Columbia. Defendants failure to implement #2 "To comply with laws that governs society " has caused significant and permanent harm to D.K. while in their care and custody.

35. Defendants failure has cause significant and permanent harm to Plaintiff well being for the time D.K. endured while residing in an unsafe and harmful living environment.

36. The Treatment/Behavior Plan developed by Defendants was designed to modify D.K.'s behaviors and provide rehabilitation appropriate to the needs of the D.K., as determined by his plan of care. Beginning in January 2007 and continuing to the present, Plaintiff Avent made numerous requests to defendants Schiraldi, Defendant Charles, Defendant Muhammad and Defendant Morris to take the necessary action to remedy the violations, to no avail.

## VIOLATIONS OF THE U.S. CONSTITUTION

## DEFENDANTS' ACTIONS AND DELIBERATE INDIFFERENCE

37. The mental health needs of the Defendants facilities operated by or under contract with Defendant DYRS did not comply with the minimum requirements set forth by the courts to defendants and their staff, and defendants have full knowledge of the facts and the unconstitutional conditions set forth herein. In maintaining and failing to correct these conditions, defendants have acted, and continue to act, with deliberate indifference to D.K.'s health, safety, and mental health needs, and to the risk that were named by Plaintiff Avent which indicates that D.K. will suffer serious psychiatric harm, physical injury, or death. The lack of supervision by DYRS and its staff of providing an unsafe environment and no mental health care services as set forth in this Complaint resulted in the unnecessary and wanton infliction of pain, physical and psychological injury and imminent risk of serious injury or of death that are unrelated to any legitimate penological purpose. Defendants have

acquiesced in and ratified these conditions, which amount to an official custom or policy of the defendants.

38. By subjecting the named plaintiff Avent and to D.K. while he is in their custody to the conditions set forth herein, with full knowledge of those conditions, defendants have acted, and continue to act, with deliberate indifference to their health, safety, and serious mental health needs, and have subjected them to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## VIOLATION OF THE DISTRICT OF COLUMIBA CODE

D. <u>Substantial Violations the District of Columbia Code § 22-3013 First Degree Sexual Abuse of A Ward.</u>

39. D. C. Code § 22-3013 clearly states:

Any staff member, employee, contract employee, consultant, or volunteer at a hospital, treatment facility, detention or correctional facility…or any official custodian of a ward, patient, client, or prisoner, who engages in a sexual act with a ward, patient, client, or prisoner, or causes a ward, patient, client, or prisoner to engage in or submit to a sexual act shall be imprisoned for not more than 10 years or fined in an amount not to exceed $100,000 or both.

40. Sometime after D.K. was committed to YSC he began to have a relationship with Defendant Austin. Upon belief and information, the relationship became an intimate relationship during D.K. commitment to Defendant DYRS facility or contracted facility.

41. Plaintiff Avent learned of the illicit relationship between D.K. and Defendant Austin in December 2006. During a family outing, Plaintiff Avent was introduced on the phone to Defendant Austin as D.K.'s girlfriend. D.K. told Plaintiff Avent that she was 32 years old (at the time), has a daughter. D.K. handed the phone to his mother and Plaintiff Avent spoke to her on the phone. Plaintiff Avent immediately told her that she do not condone D.K. going with older women, Defendant Austin said D.K. already told her and Austin just laughed. D.K. also told Plaintiff, Avent that Defendant Austin was in Fla., during this conversation and had missed the ship to go on a cruise. This was the first occasion for Plaintiff Avent to find out that D.K. was having sexual relations with Defendant Austin, despite still being confined to YSC. D.K. asked Plaintiff Avent would she be upset if she found out she was being a grandmother. Plaintiff Avent then asked who the mother is. D.K. replied Defendant Austin.

42. Soon after Plaintiff Avent began visiting with D.K. at the independent living facility in Baltimore, Maryland. Plaintiff Avent would notice women clothing and belongings in D.K.'s apartment. Plaintiff Avent would witness telephone conversation between him and Austin while on these visits.

They would discuss her work schedule and sometimes D.K. would ask Austin what she was doing at work and about what co-workers were doing, at the time.

43. In January 2007, on a visit to D.K.'s apartment, Plaintiff Avent observed a pair of women bedroom slippers that D.K. said belonged to "his girl". Plaintiff Avent also saw a train ticket for travel between DC and Baltimore. D.K. often referred to Defendant Austin as "his girl".

44. Plaintiff Avent informed Defendant Charles of the illicit relationship in or about February 2007. Defendant Charles told Plaintiff Avent that he was not going to look into her allegations that a DYRS staff was having a sexual relationship with D.K.

45. In March 2007, on a visit to Baltimore after a team meeting with D.K., there was a woman in Derrick's apartment in the bed, under the covers. She gave a false name of "DeMichelle". On this day, Defendant Charles drove D.K. and Plaintiff Avent to the apartment where both observed a female in the bed. Having someone in the apartment when Derrick was not there was a clear violation of Defendant DYRS facility or contracted services rules. Defendant Charles took no action.

46. During many conversations with Defendant Charles in the spring of 2007, the conversation and request was consistent. In that Plaintiff Avent wanted DYRS to conduct an investigation into her allegations that D.K. was having a sexual relationship with a DYRS correctional officer, to no avail. Defendant Charles would always reply with, "You need to give us (DYRS) evidence to pursue your allegations that D.K. is having a relationship with a DYRS correctional officer.

47. On or about May 3, 2007, Plaintiff Avent sent by email a "Request for Investigation". In the complaint Plaintiff Avent recaptures the events leading up to revealing the name of the correctional officer having illicit relations with her son who is a ward of the District of Columbia.

48. On May 8, 2007, in a meeting held at 450 H. Street, N. W. where Defendant Charles and WINS services representative, Plaintiff Avent and D.K. were present the subject about the illicit relationship with Defendant Austin was discussed. Plaintiff Avent was told that D.K. should be allowed to live his life. That D.K. was an adult and can make his own decisions now.

49. During conversations with Defendant Charles and when the topic of the illicit relationship between D.K. and Defendant Austin, his response would say it is out of his hands.

50. Plaintiff Avent had numerous conversations with Defendant DYRS contracted facility staff who acknowledged D.K. had a "correctional officer girlfriend". The staff on many occasions had saw Defendant Austin in D.K.'s apartment. They took no action.

51. Defendants DYRS continued to fail to take action even when told by their contracted staff that Defendant Austin was coming to Baltimore to see D.K.

52. Defendant Charles in a letter dated July 2, 2007 after D.K. initiated the formal compliant, wrote"

- 9 -

"...During this latest team meeting regarding your son [D.K.] he [D.K.] discussed his desire to move to Boston to reside with his Grandmother...or in the alternative, he would like to reside with his girlfriend in Alexandria, Virginia. DYRS is exploring these potential options."

53. It is upon information and belief, the "girlfriend in Alexandria, Virginia" was in fact Defendant Austin. Defendants DYRS were going to release D.K. to the very correctional officer Plaintiff Avent instituted a formal complaint against for having a relationship in violation of the D. C. Code.

54. Shortly after this, all family team meeting ceased, all contact with D.K. ceased with the encouragement and direction of Defendants DYRS.

55. On or about August 9, 2007 Plaintiff Avent sent an email to Judge Ryan of the District of Columbia Superior Court outlining her concerns and the information about the illicit relationship D.K. was having with Defendant Austin. This was done to prevent D.K. from being released to his "girlfriend in Alexandria, Va.", better known as Defendant Austin.

56. On August 13, 2007, Plaintiff Avent received an email from Defendant Muhammad that he "will be looking into your concerns". The email was sent after a two hour discussion with Defendant Muhammad, Defendant Charles and Defendant Morris. It was in that meeting that all defendants were successfully in making Plaintiff Avent feel like she was the problem and that her son [D.K.] had not problems.

57. The Defendants did not care about what Plaintiff Avent had to say about D.K. and Defendant Austin; they used the time to mentally beat her down about not being a good parent.

58. Defendant Schiraldi was emailed of this illicit relationship and never responded to Plaintiff Avent concerns.

59. On August 15, 2007, Plaintiff Avent emailed Defendant Muhammad with one final plea to help her stop the illicit relationship Defendant Austin was having with her son [D.K.].

60. On August 16, Plaintiff Avent learned that Defendant Austin had married D.K. On August 20, Plaintiff Avent received a telephone call from Defendant Charles that D.K. had been arrested for domestic violence of Defendant Austin. Defendants DYRS had full knowledge of the event and did nothing to deter or prevent the marriage despite being on record of knowing about the illicit relationship. Despite the arrest of D.K. for domestic violence, Defendants DYRS failed to take any action other than to suspend Defendant Austin with pay.

61. On August 24, 2007, Plaintiff Avent faxed to Judge Dixon's chamber a letter outlining a chain of events leading to the letter. The spoke of the illicit relationship that Defendant Austin was engaged in with D.K. The letter detailed not only the illicit relationship but criminal activities D.K. were

committing with the full knowledge of Defendants DYRS. The letter further had attached a copy of an email exchange between Defendant Muhammad, and Defendant Akinboyewa.

62. Sometime in late August 2007, D.K. instituted a request for an investigation of the District of Columbia Department of Youth Rehabilitation Services with the Office of Inspection General. Plaintiff received the standard boilerplate letter stating an investigation will be conducted. But has not received any indication that such an investigation is being conducted.

63. Upon information and belief, sometime in September 2007 a custody order was issued by the courts for D.K.. Defendant Austin failed to take action as required by the oath of office she took to uphold the laws of the land. Defendants DYRS failed to take action as required by the District of Columbia laws to uphold the law and enforce the custody order.

64. Defendants DYRS and Defendant Austin further inflicted pain and suffering upon Plaintiff Avent when her son, D.K. was taken, without legal consent to Florida where once again, he [D.K.] was arrested for domestic violence.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65. Defendants DYRS, Defendants, Schiraldi, Defendant Charles, Defendant Muhammad, Defendant Morris and Defendant Austin intentionally and with reckless disregard for the impact upon Plaintiff Avent's health continually ignored her pleas for help with D.K. who was committed to their jurisdiction for mental health care services.

66. The defendants' conducts were so extreme and outrageous that Plaintiff sought mental health services, for herself. The sleepless nights and constant headaches even took it toll on her physical health causing her to take medications.

67. Because defendants continually and recklessly caused D.K. to be arrested twice for domestic violence, placing him in a dangerous situation where death could have resulted; these behaviors is the cause of Plaintiff Avent's emotional distress.

WHEREFORE, Plaintiff prays for relief from this Court as follows:

a. Award plaintiff damages, subject to proof and in the amount of $100,000,000,000 or an appropriate amount to be determined at trial, for violating plaintiff Fuller's constitutional rights, for depriving D.K. of his constitutional and breach of contract, violation of the D. C. Code; and for intentional infliction of emotional distress on both plaintiffs;

b. Award plaintiff all appropriate relief, including injunctive and declaratory relief and damages subject to proof, under the CRA of 1871 and 42 U.S.C. § 1985(2);

- 11 -

c.  Award plaintiff actual damages, compensatory damages for, <u>inter alia</u>, emotional distress and humiliation, subject to proof and in an amount to be determined at trial, as appropriate;

d.  Award plaintiffs punitive damages, subject to proof and in an amount to be determined at trial, as appropriate;

e.  Award plaintiffs costs and fees;

f.  Award plaintiffs all fees and costs, including, but not limited to, attorneys' fees, expert witness fees, court costs, accountant fees and forum fees as available under law and/or 42 U.S.C. § 1983; and

g.  Grant such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

_[signature]_
Gail Avent
4818 Jay Street, N.E.
Washington, D. C. 20019
(202) 747-8878

Dated: January 4, 2008



| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊙ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

(Civil Rights Violations and Negligence-42 U.S.C. § 1983 Eighth Amendment-Intentional Infliction of Emotional Distress)

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐

DEMAND $ 100,000,000,000   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

## VIII. RELATED CASE(S) IF ANY

(See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 1/8/08   SIGNATURE OF ATTORNEY OF RECORD [signature]

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.